8 A.3d 337

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**James Dennis GRIMES, Appellee.**

Supreme Court of Pennsylvania.

Argued April 13, 2010.

Decided Nov. 23, 2010.

Amy Elizabeth Constantine, Allegheny County District Attorney's Office, for Commonwealth of Pennsylvania.

Scott Bruce Rudolf, Allegheny County Public Defender's Office, for James Dennis Grimes.

## *ORDER*

PER CURIAM.

**AND NOW,** this 23rd day of November, 2010, the appeal is dismissed as having been improvidently granted.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice McCAFFERY files a dissenting statement.

Justice McCAFFERY, dissenting.

I respectfully dissent from the decision to dismiss this appeal as having been improvidently granted because I believe this case affords the Court an opportunity to clearly state, and apply, the law regarding fleeing suspects in high-crime areas and regarding fleeing suspects who exactly match the description of an individual reportedly engaged in illegal activity. I

believe the Court has an obligation to grapple with these significant recurrent issues and to provide guidance to the bench and bar.

As established by the evidence introduced by the Commonwealth at the suppression hearing, Appellee was observed at a specific location in a high-crime drug trafficking area at a time when he was under surveillance by an Allegheny County detective. The detective had received a phone call approximately one hour earlier from a confidential informant, who said that an individual exactly matching Appellee's appearance was offering crack cocaine for sale at that specific location. Appellee did not engage in any suspicious behavior during the ten-minute period during which this detective, alone, observed him. However, when another officer arrived shortly thereafter in a marked patrol car and pulled next to where Appellee was standing, Appellee removed his jacket, threw it and his cell phone onto the street, and fled in the opposite direction. The officer and the detective gave chase, overtaking Appellee by using a Taser. The police recovered Appellee's jacket from the street, searched it, and seized cocaine and an open pack of latex gloves from the right pocket. After a hearing on Appellee's subsequent motion to suppress, the trial court denied the motion. Appellee was convicted of possession of controlled substance, possession with intent to deliver, and possession of drug paraphernalia. On appeal to the Superior Court, Appellee's judgment of sentence was reversed on the basis that Appellee had been arrested without probable cause.[1]

In *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court held that, as a matter of federal constitutional law, a police officer is justified in reasonably suspecting that an individual is involved in criminal activity when that individual is present in

---

1. If the police possess reasonable suspicion at the time they observe property being discarded by a suspect during the suspect's flight from them, then the police may properly recover that property. *See Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 674–75 (1999) (affirming denial of a motion to suppress contraband discarded by defendant as he fled from the police). Here, the Superior Court engaged in a misguided analysis of whether the police had probable cause to arrest Appellee after his flight and after recovery of the jacket.

a high-crime area and engages in unprovoked, headlong flight after noticing the police. Specifically, the High Court held that the existence, in combination, of two specific factors supported reasonable suspicion, to wit, 1) presence in a high-crime area; and 2) unprovoked flight. This Court subsequently recognized the significance of the *Wardlow* holding, and stated "it is evident that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a *Terry* stop under the Fourth Amendment." *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1164 (2001). Further, in *In re D.M.*, this Court held, as a matter of both federal and state constitutional law, that where a person, who exactly matches an anonymous caller's physical description of a man wielding a gun at a specified location, flees upon observing the arrival of a police officer, there is sufficient reasonable suspicion to justify a *Terry* stop. *Id.* Specifically, this Court held that the existence, in combination, of two specific factors supported reasonable suspicion, to wit, 1) an exact match in the physical description of an individual reportedly engaged in illegal activity; and 2) unprovoked flight.

Under *Wardlow*, then, once the existence of unprovoked flight in a high-crime area is established, that is the end of the inquiry. Similarly, under *In re D.M.*, once the existence of unprovoked flight by a person who exactly matches the physical description of an individual reportedly engaged in illegal activity is established, that also is the end of the inquiry. The Commonwealth has thereby, and without more, fulfilled its obligation to demonstrate that the pursuing police officer had reasonable suspicion that the fleeing suspect was engaged in criminal activity.

Thus, *Wardlow* and *In re D.M.* identify two separate instances where the existence of two circumstances, if proven in combination, are of themselves sufficient to establish reasonable suspicion. In essence, two exceptions to the totality of the circumstances analysis have been created by the United States Supreme Court[2] and this Court. Yet, Pennsylvania

2. The Supreme Court re-asserted the **general** applicability of the totality of the circumstances test in *United States v. Arvizu*, 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

courts, at every level, routinely fail to appreciate what *Wardlow* and *In re D.M.* hold is the **dispositive effect** of unprovoked flight by a person in a high-crime area or by a person who exactly matches the physical description of an individual reportedly engaged in illegal activity, in the determination of the existence of reasonable suspicion to conduct an investigative detention. I believe it is incumbent upon this Court to supply the guidance necessary so that suppression motion rulings regarding the existence of reasonable suspicion are rendered under the appropriate legal standard. Accordingly, I would not dismiss this appeal. Rather, I would apply the holdings of *Wardlow* and *In re D.M.*, and accordingly would reverse the order of the Superior Court, and reinstate the judgment of sentence.[3]

**3.** Notably, the question of whether reasonable suspicion to stop a fleeing suspect existed was not before the Court in *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996), wherein the sole issue was whether contraband discarded by a person fleeing a police officer was the fruit of an illegal seizure where the officer **concededly** possessed neither probable cause to arrest the individual nor reasonable suspicion to stop him for a *Terry* frisk. *See In re D.M., supra* at 1164, n. 1.